# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| **ANDREW B. GLASCOFF,** ) <br> **MATTHEW B. GLASCOFF, and** ) <br> **TIMOTHY C. GLASCOFF,** ) <br> ) <br> **Plaintiffs** ) <br> **v.** ) <br> ) <br> ) <br> **JEFFREY LAVIANO,** ) <br> **JANE DOE 1, JANE DOE 2** ) <br> **JANE DOE 3, JANE DOE 4** ) <br> **JANE DOE 5, JOHN DOE 1** ) <br> **JOHN DOE 2, JOHN DOE 3** ) <br> **JOHN DOE 4, JOHN DOE 5** ) <br> ) <br> ) <br> **Defendants** ) <br> ) | **Civil Action No.:   21-** |

## COMPLAINT

Andrew B. Glascoff, Matthew B. Glascoff and Timothy C. Glascoff (collectively the "Glascoffs") bring this declaratory judgment action to obtain an adjudication of their respective rights and obligations with respect to allegations asserted by the Defendant, Jeffrey LaViano ("LaViano") as to the existence of an oral contract requiring the Glascoffs to sell to LaViano their property located at 3 Oyster Road, Narragansett, RI.

## PARTIES

1. Andrew B. Glascoff is an individual residing at 87B Hedlund Road, East Haddam, CT.

2. Matthew B. Glascoff is an individual residing at 219 Whitehorn Drive, Guilford, CT.

3. Timothy C. Glascoff is an individual residing at 10026 Longhorn Skyway, Dripping Springs, TX.

4. Jeffrey LaViano is an individual residing at 48 Four Corners Road, Warwick, NY.

5. Jane Does 1 through 5 are necessary but unknown Defendants in this case to the extent that they may be assignees of Jeffrey LaViano. This Complaint shall be amended in accordance with the applicable rules of civil procedure upon further discovery of the true identity of said unknown Defendants and the facts and circumstances of any claims against them as assignees.

6. John Does 6 through 10 are necessary but unknown Defendants in this case to the extent that they may be assignees of Jeffrey LaViano. This Complaint shall be amended in accordance with the applicable rules of civil procedure upon further discovery of the true identity of said unknown Defendants and the facts and circumstances of any claims against them as assignees.

## JURISDICTION

7. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a), as there is diversity of citizenship between the parties and the matter in Controversy exceeds the sum or value of Seventy Five Thousand Dollars ($75,000). The parties to this Complaint are and have at all relevant times been citizens of different states, with the Glascoffs being citizens of Connecticut and Texas and LaViano being a citizen of New York.

8. This Court has personal jurisdiction over this matter as LaViano has maintained continuous and systematic contact with the State of Rhode Island with respect to the facts and circumstances of this case and this declaratory judgment action arises out of the LaViano's contacts in the State of Rhode Island and his allegation that he is entitled to purchase the Glascoffs' property in Narragansett, RI. An actual controversy exists between the Glascoffs and LaViano as to the rights and responsibilities of the parties regarding the sale of the Glascoffs' Narragansett, RI property, and thus, this Court may declare the rights and legal obligations of the parties pursuant to 28 U.S.C. § 2201.

## FACTS

9. The Glascoffs are siblings and the owners of the property located at 3 Oyster Road, Narragansett, RI (the "Property") and they have been the record owners of the same since February 17, 1999 when the Property was deeded to them by their mother, Susan T. Glascoff ("Susan"). Since that time Susan continued to maintain a role in the management of the Property by virtue of having been granted such authority under a Durable Power of Attorney executed by each of the Glascoffs appointing her as attorney-in-fact.

10. Since 1999, the Glascoffs and Susan engaged in periodic short term rentals during the summer months. The Glascoffs typically visited the Property for less than two weeks per year. Susan also visited the Property occasionally for maintenance cleaning and improvements.

11. LaViano was one of the short term summer rental tenants of the Property for the summers of 2019 and 2020.

12. Prior to LaViano's 2019 summer rental of the Property, LaViano and Susan engaged in discussions about the possibility of LaViano purchasing the Property.

13. In or about October of 2019, the discussions between Susan and LaViano regarding LaViano's potential purchase of the Property included the condition of the septic system, upgrades made the Property during the Glascoffs' ownership and a potential purchase price.

14. As of October 17, 2019, Susan and LaViano reached a tentative verbal understanding regarding LaViano's potential purchase the Property. To that end and with full knowledge that he needed a signed written agreement with the Glascoffs to make the tentative agreement binding, LaViano, drafted a Memorandum of Agreement (the "Memorandum") which specifically provided as follows:

Memorandum of agreement

> Jeffrey LaViano 48 four corners rd. Warwick NY 10990 (buyer) has entered into an agreement with Matthew Glascoff, Andrew Glascoff and Timothy Glascoff (168 Riverview Drive, Guilford, CT 06437 (sellers) to purchase their home on 3 Oyster road. Narragansett, RI 02882 in the amount of eight hundred and sixty five thousand dollars. This memorandum stands as an agreement by both the seller and the buyer to complete the sale in 2020. The memorandum of agreement is being established today October 17, 2019. (*Grammatical errors in the original) (See Exhibit A).*

15. The Glascoffs never delivered a fully executed original or copy of the Memorandum to LaViano.

16. Although Susan was attorney-in-fact for the Glascoffs, LaViano was also fully aware that it was necessary for all three of Glascoffs to agree to and execute the Memorandum. This undisputed fact is evidenced by the Memorandum itself, which LaViano personally drafted, specifically identifying the Glascoffs as the "sellers" of the Property and including signature lines for each of them in such capacity, along with a signature line for Susan as attorney-in-fact.

17. Clearly, from the inception of LaViano's dealings with Susan in negotiating the terms of a potential agreement to purchase the Property, LaViano was fully aware of the importance of securing a written and signed memorandum of agreement to create a binding contract. His knowledge in this regard and his repeated acknowledgments as time progressed that no memorandum of agreement was signed is fatal to any claim LaViano may now have to compel a sale of the Property to him.

18. While the Memorandum may accurately reflect the tentative discussions between LaViano and Susan with respect to LaViano's potential purchase of the property, it is undisputed that the Glascoffs, in their capacity as owners of the Property, never delivered an executed original or copy of the Memorandum to LaViano at any time after October

3

17, 2019 and never engaged in any direct conversations with LaViano regarding the same.

19. On October 21, 2019, Susan communicated with LaViano via email *(See Exhibit B)* pointing out several discrepancies in the Memorandum and, significantly, noting that Timothy Glascoff would not be in a position to execute the Memorandum, or any corrected version thereof as requested in the email, until either Thanksgiving or Christmas.

20. At the time of Susan's October 21, 2019 email, her son Andrew Glascoff  was in the midst of divorce proceedings in Connecticut and it is undisputed that LaViano was fully aware that Andrew Glascoff would not entertain executing the Memorandum until such time as his divorce proceedings were concluded. This undisputed fact is further supported by Susan's reference in the October 21, 2019 email where she stated "Andy will not sign until he is allowed, as you know." *(See Exhibit B)*.

21. LaViano's knowledge that Andrew Glascoff's divorce stood as an obstacle to his goal of securing a binding written contract is further evidenced by LaViano's email of February 17, 2021 in which he states: "That because of your sons *(sic)* situation we cannot come up with a formal agreement but you gave me your word that once his divorce was finalized we would finalize this transaction." *(See Exhibit C)*.

22. Andrew Glascoff's divorce proceedings dragged on for months into 2021 and he never executed the Memorandum. No fully executed copy of the original Memorandum, or any corrected version thereof as requested in Susan's October 21, 2019 email, was ever returned to LaViano and the only copy of the Memorandum that exists today is reflected in Exhibit A, bearing none of the Glascoffs' signatures. Moreover, LaViano has acknowledged on multiple occasions, both orally and in writing that there is no signed contract between himself and the Glascoffs.

23. Andrew Glascoff's divorce proceedings concluded on February 8, 2021 and Susan and the Glascoffs turned their attention to selling the Property.

24. Common wisdom suggests that due to the impact of the Covid-19 pandemic and plummeting mortgage interest rates, real estate property values increased dramatically from the time of the tentative discussion between Susan and LaViano in 2019 through the beginning of 2021 when Andrew Glascoff's divorce proceedings had progressed to the point where he was free to join with his brothers in the sale of the Property.

25. Susan contacted LaViano by telephone on February 15, 2021 to inform him of the Glascoffs' decision to list the Property for sale and Susan reminded him of their position that there was no signed memorandum or contract with LaViano and that they could not sell the Property to him for $865,000 as suggested in the unsigned draft of the Memorandum. Susan invited LaViano to increase his offer to Purchase the Property. While LaViano was still negotiating to make a modest increase in the price he was willing to pay, he was not willing to negotiate a higher price near current fair market value. LaViano's willingness to continue negotiating is further indicative of his

knowledge that he did not possess a binding written agreement to purchase the Property under the proposed terms of the unsigned draft of the Memorandum.

26. LaViano followed up on his telephone conversation with Susan in his email dated February 17, 2021 *(Exhibit C)* expressing his dismay that, notwithstanding the absence of a written contract, Susan and the Glascoffs would seek to negotiate a purchase price consistent with the current fair market value of the Property. Insisting that Susan and the Glascoffs had a moral obligation to sell the Property to him for substantially less than the current fair market value. In refusing to negotiate, LaViano stated "I walk away. Not worth it… bad juju in my opinion. You want to walk away on our [verbal] agreement… so be it."

27. In an email dated February 18, 2021, LaViano again confirmed that there is no written agreement between himself and the Glascoffs related to the Property when he stated that he was withdrawing from the negotiations with Susan. LaViano stated in this email: "Me walking away from a deal because you can't sell or because the market changed and I can no Longer *(sic)* afford it (which is not the case) is not in the same stratosphere of someone extorting more money **simply because there is no contract... I withdraw my position.** *(See Exhibit D)(emphasis supplied).*

28. Since LaViano twice communicated his position in writing on February 17, 2021 and February 18, 2021 that he was withdrawing from the transaction, the Glascoffs listed the Property for sale on February 19, 2021 and there was immediate and significant interest from multiple prospective purchasers at a price substantially higher than LaViano was willing to pay, including multiple written offers to purchase the Property at the listed asking price.

29. On February 21, 2021, LaViano wrote to Susan stating that he was aware that the Property was listed for sale. *(See Exhibit E).*

30. It is clear that LaViano, vested with a full and complete understanding that he did not possess a binding contract to purchase the Property, pivoted to a vengeful effort to stand in the way of the Glasoffs' sale of the Property. LaViano went so far as to threaten to contact Andrew Glascoff's former spouse, stating in his February 21, 2021 email: "Furthermore, I am not sure of what status Andy's divorce is at but i *(sic)* think it would be fair and correct to inform Kamila of her ex's premeditated motivation and the family's for two years to deny her funds from the sale of the RI home."

31. LaViano's inappropriate threat carries with it no power to intimidate Susan or the Glascoffs, however, since Andrew Glascoff fully disclosed his ownership interest in the Property to his former spouse in the context of the now concluded divorce proceedings.

32. LaViano's email to Susan on February 21, 2021 is also important because although he confirms his withdrawal from the transaction, he nevertheless raises the specter of vexatious and unfounded litigation to follow from his family members stating: "My family however is not of the same mindset and very upset about the unfairness of your breaking our agreement….They are hiring an attorney and going to pursue this legally which could tie up the sale of [the Property] for a couple of years. *(See Exhibit E).*

33. As of the date of this Complaint, the Glascoffs are unaware of the identity of the LaViano family members who intend to file a lawsuit against them challenging the Glascoffs' right to sell the Property, however, these unnamed family members are indispensable parties to this litigation inasmuch as they may possess an assignment of claims from LaViano and this Court cannot render a judgment declaring the rights and obligations of the parties unless all such Jane Doe and John Doe LaViano family members are identified and included as named defendants in this case.

34. The Glascoffs entered into a contract for the sale of the Property to Renee Realty, LLC, for $1,095,000.00, however the contract cannot be consummated because of LaViano's threat of litigation, which has created an air of uncertainty that will prevent the Glascoffs from selling and transferring clear and marketable title in the ordinary course of business.

35. The Rhode Island Statute of Frauds as it relates to this case is codified at R.I.G.L. § 9-1-4 and provides:

> Statute of frauds. - No action shall be brought:
>
> ******
>
> (6) Whereby to charge any person upon any agreement or promise… upon the sale of any interest in real estate, unless the promise or agreement upon which such action shall be brought, or some … memorandum thereof, shall be in writing and signed by the party to be charged.

36. In the absence of a written agreement or memorandum signed by the Glascoffs, the Rhode Island Statute of Frauds precludes any claim of LaViano, or any of his putative assignees, that the Glascoffs are obligated to sell the Property to them.

37. Nevertheless, the Glascoffs' rights to consummate the sale of the property now hang in the balance as a result of LaViano's threat of litigation which requires this Court's intervention to adjudicate the same.

## <u>PRAYERS FOR RELIEF</u>

WHEREFORE, the Glascoffs respectfully request that this Court adjudicate and declare the rights of the parties as follows:

1. Find that there is no contract or written memorandum by and between the Glascoffs and Laviano sufficient to satisfy the statute of frauds and, thus, the Glascoffs are not legally obligated to sell the Property to LaViano or any of the Jane Doe/John Doe Defendnats and further, that the Glascoffs are free to sell the property to any ready willing and able purchaser, together with an award of reasonable attorney's fees and costs of suit.

2. Grant any such other and further relief that this Court deems just and proper under the circumstances.

ANDREW B. GLASCOFF,
MATTHEW B. GLASCOFF, and
TIMOTHY C. GLASCOFF,

By Their Attorneys,

/s/ Robert A. D'Amico II, Esq.
Robert A. D'Amico II, Esq. (4593)
Patrick F. Dowling, Jr., Esq. (6863)
536 Atwells Avenue, Ste. 1
Providence RI 02909
Tel: 401-454-1211
Fax: 401-490-4809
Email: rad@dblawri.com